**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martinez**

Criminal Case No. 12-cr-0054-WJM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.     JULIO CESAR TORRES LEE,
2.     JESUS ADAIN GIRON VEGA,
3.     AGUSTIN MENDEZ-SOLORIO,
4.     VICTOR OMAR BALANDRAN-RAMIREZ,
5.     AGUSTIN AGUIRRE-RAMIREZ,
6.     JESUS GOMEZ-VALDIVIA,
7.     CESAR A. MONTES-DOMINGUEZ,
9.     JOE OTHON AVILA,
10.    ISAIAS CAST ANON-GONZALEZ,
11.    **RAUL AGUIRE-CORONADO**,
12.    EDGAR BENITEZ GARCIA, AND
13.    MOISES GALINDO RODRIGUEZ,

    Defendants.

---

**ORDER DENYING DEFENDANT RAUL AGUIRE-CORONADO'S MOTION TO
SUPPRESS INTERCEPTED WIRE COMMUNICATIONS**

---

In the Superseding Indictment, Defendant Raul Aguire-Coronado ("Defendant") is charged with conspiring to distribute and possess with intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. § 846 and knowingly and intentionally using a communication facility in the commission of a crime in violation of 21 U.S.C. § 843(b). (ECF No. 164.)  Before the Court is Defendant's Motion to Suppress Intercepted Wire Communications ("Motion").  (ECF No. 295.)  For the reasons set forth below, the Motion is denied.

## I.  LEGAL STANDARD

Wiretap authorization orders are presumed proper and the defendant bears the burden of overcoming this presumption.  *United States v. Mitchell*, 274 F.3d 1307, 1310 (10th Cir. 2001).  Thus, the defendant must present a *prima facie* showing that the Government failed to satisfy the requirements of 18 U.S.C. § 2518, which governs wire tap authorizations, and that the orders authorizing the taps were illegal.  *United States v. Borrayo-Gutierrez*, 119 F. Supp. 2d 1168, 1170 (D. Colo. 2000).

The judge to whom the application for a wiretap is submitted has considerable discretion to grant or deny the application.  *United States v. Carrillo*, 123 F. Supp. 2d 1223, 1231 (D. Colo. 2000).  However, a district court examines *de novo* whether a full and complete statement was submitted to the issuing judge and reviews for an abuse of discretion the issuing judge's conclusion that the wiretaps were necessary.  *United States v. Ramirez-Encarnacíon*, 291 F.3d 1219, 1222 n.1 (10th Cir. 2002).

## II.  FACTUAL BACKGROUND

During an investigation into Defendant Julio Torres Lee and his drug trafficking operation ("Torres Lee DTO"), Special Agent Arran McWhirter ("SA McWhirter") sought wiretaps on four target telephones, three belonging to Torres Lee, and one used by an identified associate of Torres Lee, Defendant Jesus Adain Giron Vega.  SA McWhirter's initial application, which was supported by an Affidavit dated August 19, 2011 ("Orig. Aff."), sought to intercept communications from two telephones.  SA McWhirter's second affidavit ("Renewal Aff.") sought to extend the wiretap on Target Telephone 1 and add wiretaps to Target Telephones 3 and 4.  All of the wiretaps sought were approved by either United States Circuit Judge David Ebel, United States District Judge Christine M.

Arguello, or United States District Judge Robert E. Blackburn.

The Affidavits provide the following background related to the investigation into the Torres Lee DTO.  A confidential informant ("CI"), with a history of working with governmental authorities, made contact with Torres Lee.  (Renewal Aff. ¶ 16.)  Agents consensually monitored a number of phone calls between the CI and Torres Lee during which the purchase and sale of cocaine was discussed.  (Orig. Aff. ¶¶ 24, 27.)  The CI also provided agents with a description of the vehicle driven by Torres Lee.  (*Id.* ¶ 16.)

Agents conducted surveillance on a residence linked with Lee.  (*Id.* ¶ 37.)  They ran records searches on all vehicles that entered and existed the property.  (*Id.*)  Agents concluded that this residence was likely one of Torres Lee's "stash houses".  (*Id.*)

Based on information provided by the CI and visual surveillance, Agents were able to install a GPS tracking device on Torres Lee's vehicle and monitor his movement.  (*Id.* ¶¶ 25, 28-29.)  Also with information provided the by CI, Agents were able to check public records and verify Torres Lee's residence, employment history, and immigration status.  (*Id.* ¶¶ 20-23.)  Agents obtained telephone toll records, pen registers, and "trap and trace" for two telephones linked to Torres Lee.  (*Id.* ¶ 36.)  These showed that Torres Lee was placing calls to a variety of telephone numbers that were associated with individuals involved in the drug trade.  (*Id.* ¶¶ 59-60.)

The details of these traditional investigative techniques was described in detail in SA McWhirter's Affidavits in support of the wiretaps.  SA McWhirter concluded that these traditional law enforcement efforts "have failed to achieve the full objectives of this investigation, reasonably appear to be unlikely to succeed if tried, or are too dangerous to employ."  (*Id.* ¶ 64.)  McWhirter stated that physical surveillance had resulted in the

identification of some individuals affiliated with Torres Lee as well as some locations used by his operations, but was unable to provide any information regarding the degree of involvement by these other individuals or any other people that did not have physical contact with Torres Lee. (*Id.* ¶¶ 67-72.) Physical surveillance was also unable to provide Agents with information regarding Torres Lee's source of supply, or the means and methods he uses to finance his drug purchases. (*Id.* ¶ 67.) SA McWhirter also noted that physical surveillance of some of the buildings and areas associated with Torres Lee was difficult, if not impossible, because these locations were rural and any increased law enforcement activity could easily be detected. (*Id.* ¶ 68.)

SA McWhirter also stated that the telephone toll records, pen register, and trap and trace information provided some useful information about phone numbers with which Torres Lee was communicating. (*Id.* ¶ 88.) However, these methods do not identify who was making the call and do not disclose the nature or the purpose of the communication. (*Id.* ¶ 89.) Also, by their nature, these methods can only provide information about what occurred in the past, and are therefore of limited value as a resource to use in conjunction with ongoing physical surveillance. (*Id.* ¶ 90.)

With respect to the vehicle tracking devices, SA McWhirter noted that they were helpful in identifying locations used by Torres Lee but could not provide any information regarding co-conspirators, his source of supply, methods of smuggling and trafficking, or the overall scope of the conspiracy. (*Id.* ¶ 93.) With regard to the search of public records and investigation into financial records, SA McWhirter stated that Agents had obtained some information about Torres Lee and his assets but further use of these methods was unlikely to result in achieving the objectives of the investigation. (*Id.* ¶¶

94-96.)

SA McWhirter also discussed why a number of traditional investigative techniques—which either had not been attempted or used only minimally—were not likely to result in achieving the objectives of the investigation.  With respect to search warrants, McWhirter stated that agents had not established probable cause to search any particular location.  (*Id.* ¶ 77.)  He also noted that searching one location was unlikely to reveal the full scope of the conspiracy.  (*Id.* ¶¶ 75-76.)  Agents opted not to examine Torres Lee's discarded trash because his trash was co-mingled with others from his apartment building and there was no evidence that he conducted much business in writing.  (*Id.* ¶¶ 91-92.)

With respect to cooperating sources and undercover investigators, agents used a CI in this case but the CI was unable to earn Torres Lee's trust and obtain any significant information about the DTO.  (*Id.* ¶ 80.)  McWhirter noted that, in his experience, major drug traffickers insulated themselves and rarely conducted business with anyone not well-known to them.  (*Id.* ¶ 81.)  Aside from the CI, agents were unable to locate any other witnesses that they could interview or subpoena to testify in front of a grand jury tipping off Torres Lee and his organization.  (*Id.* ¶ 84.)

Based on this information, agents were authorized to conduct electronic surveillance on Target Telephones 1 and 2.  After that authorization expired, SA McWhirter filed his Renewal Affidavit seeking an extension of monitoring on Target Telephone 1 and initial authorization to monitor Target Telephones 3 and 4.  This Affidavit provided information about the results of the initial wiretaps and the progress of the investigation.  Because the instant Motion challenges only whether agents gave

traditional investigative techniques sufficient time to work before seeking the initial wiretap authorization, the Court need not elaborate on the contents of the Renewal Affidavit.

### III. ANALYSIS

Federal investigatory wiretaps are governed by Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-22. Section 2518 sets forth the requirements for issuance of a wiretap warrant. The only requirement at issue in the instant Motion mandates that the government submit a written application to the issuing judge setting forth, among other things, "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried." 18 U.S.C. § 2518(1)(c). This provision is called the "necessity requirement." *U.S. v. Verdin-Garcia*, 516 F.3d 884, 889-90 (10th Cir. 2008)(citing *United States v. Green*, 175 F.3d 822, 828 (10th Cir. 1999)). "The purpose of this requirement is to ensure that the relatively intrusive device of wiretapping is not resorted to in situations where traditional investigative techniques[1] would suffice to expose the crime." *Id.* (citation omitted).

The necessity requirement is not to be treated hypertechnically and does not mandate exhaustion of all possibilities. *Id.* at 890. It is "met if the government demonstrates either [that] normal investigatory techniques have been tried and failed or

---

[1] Traditional investigative techniques generally include: (1) standard visual and aural surveillance; (2) questioning and interrogation of witnesses or participants (including the use of grand juries and the grant of immunity if necessary); (3) use of search warrants; and (4) infiltration of conspiratorial groups by undercover agents or informants; and (5) the use of pen registers and trap-and-trace devices." *Verdin-Garcia*, 516 F.3d at 890; *see also Ramirez-Encarnacíon*, 291 F.3d at 1222 n.2.

that they 'reasonably appear to be unlikely to succeed if tried, or to be too dangerous to try.' " *Id.* (citing *U.S. v. Ramirez*, 479 F.3d 1229, 1240 (10th Cir. 2007)) (quoting *United States v. Castillo-Garcia*, 117 F.3d 1179, 1187 (10th Cir. 1997)).  The government is expected to act "in a common sense fashion," and on review federal district courts consider "all the facts and circumstances in order to determine whether the government's showing of necessity is sufficient to justify a wiretap." *Ramirez-Encarnacion*, 291 F.3d at 1222 (internal quotation marks omitted).  The overall burden on the government "is not great." *Id.*

In this case, Defendant argues that the wiretaps should not have been authorized because the affidavits underlying the wiretaps failed to meet the necessity requirement. (ECF No. 295 at 12-13.)  Specifically, Defendant contends that the normal investigative processes were "working well" and "simply were not given enough time to be effective despite the obvious fruits they were bearing in the short time they were utilized." (*Id.*) Defendant argues that, given the success agents were having with the traditional investigative techniques, "[b]oilerplate assertions and conclusions from earlier applications and affidavits for the wiretaps" were not sufficient to establish necessity. (*Id.* at 14.)

The Government acknowledges that traditional investigative techniques had been successful to a certain degree, especially with respect to building a case against Defendant Torres Lee.  (ECF No. 310 at 16.)  Working with the CI, agents were able to learn that Torres Lee was importing cocaine from Mexico and distributing it through Colorado to Kansas.  (Orig. Aff. ¶ 16.)  Agents were able to monitor a phone call

7

between the CI and Torres Lee during which the purchase and sale of cocaine was discussed. (*Id.* ¶ 24.) Through observation and use of a pen register, they were also able to learn that Torres Lee was in contact with other known drug distributors. (*Id.* ¶¶ 49-57.)

While this supports Defendant's contention that traditional investigative techniques were working, at least to some extent, "the mere attainment of some degree of success during law enforcement's use of traditional investigative methods does not alone serve to extinguish the need for a wiretap." *United States v. Carrillo*, 123 F. Supp. 2d 1223, 1235 (D. Colo. 2000) (quoting *United States v. Bennett*, 219 F.3d 1117, 1122 (9th Cir. 2000)). Necessity may still exist even where traditional investigative procedures can lead to the successful development of evidence against some, but not all, members of a narcotics conspiracy. *Torres*, 908 F.2d at 1422.

The Court finds that SA McWhirter established that the wiretaps were necessary to achieve the objectives of the investigation, *i.e.*, to obtain information regarding the organizational structure of the Torres Lee DTO, identify the suppliers of the Torres Lee DTO, and obtain evidence of future drug transactions involving other members of the Torres Lee DTO. (Orig. Aff. ¶ 12; Renewal Aff. ¶ 14.) The success that agents achieved using traditional investigative techniques was limited to building a case against Torres Lee. They were unable to achieve much success regarding the broader conspiracy, including Torres Lee's source of supply and the other members of the conspiracy. Even with respect to Torres Lee individually, traditional investigative methods were unsuccessful in identifying the means and methods Torres Lee used to finance his cocaine purchases or hide the proceeds once he as distributed the cocaine

or to determine the degree of collaboration between Torres Lee and his identified associates. (Orig. Aff. ¶¶ 67, 73.)

Defendant argues that the Affidavits relied on "[b]oilerplate assertions and conclusions from earlier applications and affidavits for wiretaps" which were insufficient to establish the required necessity. (ECF No. 295 at 14.) The Court disagrees. The Affidavits go into significant detail about the specific efforts taken in this case and why continuing traditional investigative methods would not likely result in an additional information that would achieve the objectives of the investigation. (*E.g.*, Orig. Aff. ¶¶ 68-69; 75-78; 80-81; 84-86; 88-90; 91; 93.) For example, SA McWhirter stated that the CI was unable to infiltrate the organization any further and agents were unable to locate any witnesses that they could interview or subpoena to testify in front of the grand jury without tipping off the suspects to the investigation. (Orig. Aff. ¶¶ 80-84.) McWhirter noted that Torres Lee and his associates were "extremely careful and cognizant of law enforcement and having their illegal activities detected." (Orig. Aff. ¶ 64.) SA McWhirter stated that "[s]uch behavior makes the use of traditional investigative techniques alone difficult, if not impossible, for agents to achieve the objectives of the investigation." (Orig. Aff. ¶ 64.)

The Tenth Circuit has held that determination of the dimensions of a narcotics conspiracy and identification of the source of drugs are legitimate investigatory goals necessitating employment of wire taps for the purposes of 18 U.S.C. § 2518. *United States v. Newman*, 733 F.2d 1395, 1399 (10th Cir. 1984). Law enforcement personnel are often tasked with identifying all of the members of a conspiracy and the precise nature and scope of illegal activity, and may utilize electronic surveillance toward those

ends when traditional techniques fail.  *United States v. Johnson*, 645 F.2d 865, 867 (10th Cir. 1981); *United States v. Mesa-Rincon*, 911 F.2d 1433, 1443-44 (10th Cir. 1990).  Having reviewed the Affidavits, the Court concludes that the Government's explanations in the Applications for the wiretaps issued in this case comprise "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous" and therefore comply with 18 U.S.C. § 2518(1)(c).

### IV.  CONCLUSION

For the reasons set forth above, Defendant Raul Aguirre-Coronado's Motion to Suppress Intercepted Wire Communications (ECF No. 295) is DENIED.

As the Motion to Suppress was the only outstanding motion in this case, the Court hereby SETS a 5-day jury trial to commence at 8:00 a.m. on April 15, 2013 in Courtroom A801.  A Final Pretrial Conference will be held at 9:00 a.m. on April 5, 2013 in Courtroom A801.

Dated this 15th day of February, 2013.

BY THE COURT:

William J. Martinez
United States District Judge